UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK HANSEN,<br>Plaintiff,<br>v.<br>WAL-MART STORES, INC.,<br>Defendant. | No. 2:25-cv-0909 TLN AC PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this action pro se and the case was accordingly referred to the undersigned by Local Rule 302(c)(21). Defendant moved for summary judgment. ECF No. 20. Plaintiff filed an opposition to the motion, ECF No. 20, and defendant replied. ECF No. 25. At the direction of the court (ECF No. 26) plaintiff filed a supplemental opposition. ECF No. 27. For the reasons set forth below, the undersigned recommends that defendant's motion be GRANTED and that judgment be entered in favor of defendant.

## I. Complaint and Procedural Background

This case was originally filed in the Superior Court of California and was removed by defendant to federal court pursuant to 28 U.S.C §§ 1332, 1441. The complaint is located at ECF No. 1-1. Plaintiff is suing defendant for emotional distress and age discrimination. ECF No. 1-1 at 8-9. The allegations in the complaint are as follows.

Plaintiff attended training to be a commercial truck driver for Walmart on October 30,

2023. ECF No. 1-1 at 9. Plaintiff was 71 years old at the time, and most of the other candidates were "youthful and were in their twenties and thirties in age." Id. Plaintiff was promised when he applied to work for Walmart that he would not be discriminated against because of his advanced age. Id. Plaintiff arrived on time at the training and passed the required drug test. Id. Plaintiff was then taken to a training classroom and instructed to sit in the third row, which was the last row. Id. The instructor was approximately 50 years old and told the group that there would be 5 days of training, and that he would randomly call on people in the class for their comments. Id. The instructor also informed the group that they would be called to exit the classroom to perform road tests in a tractor/trailer. Id.

Plaintiff was the first person called to perform a road test. Id. When he entered the tractor/trailer, he noticed the instructor did not have any pen or paper to take notes. Id. The driving test took approximately 45 minutes and then plaintiff returned to the classroom. Id. Plaintiff received no feedback from the instructor. Id. Back in the classroom, the instructor told the group that it was company policy not to comply with CHP officers and not to open the doors. Id. He looked at plaintiff and asked for a comment and plaintiff said that if his drivers refused to open the doors that they would be arrested. Id. Plaintiff told the class that they must all comply with CHP or local police orders at all times, which upset the instructor. Id. The next day, plaintiff showed up early and the instructor, who was named Brian, commented that plaintiff was always prompt and attentive in class. Id. Plaintiff told him his son was also named Brian, and he hoped that he would be given a fair opportunity to pass the training. Id.

Plaintiff alleges that on November 1, 2023, he was terminated from his position as a truck driver for Walmart after only three days of employment, after being told he failed all three "Road Tests." ECF No. 1-1 at 9. Defendant advised plaintiff that while driving the tractor/trailer he ran many stop signs and failed to stop for red lights and yellow flashing school zone lights. Id. at 8. Plaintiff was also told he was a dangerous driver because he tailgated other cars and was always speeding. Id. Plaintiff contends these statements are lies. Id. Plaintiff alleges that the tests were conducted by three separate instructors, and none of the instructors took notes or told him he failed the road tests. Id. Plaintiff has driven a commercial truck for over 50 years and has never

been in an accident and has never received a citation. Id. Plaintiff has suffered emotionally from defendant's extreme and outrageous conduct. Id.

## II. Standard for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R.

Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Service, Inc., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa County Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

## III. Statement of Undisputed Facts

Defendants' statement of undisputed facts is located at ECF No. 20-5 and is supported by the declarations of attorney Will R. Dischmann (ECF No. 20-2); driving assessor and associate employe of defendant Brian Wierzbicki (ECF No. 20-3); driving assessor and associate employe of defendant Jason Watson (ECF No. 20-4); and attached exhibits 1-6, which include employee training materials and copies of plaintiff's performance evaluations. Plaintiff's responsive

statement of facts is located at ECF No. 27. Plaintiff submitted responses to defendant's statement. ECF No. 26. Plaintiff also submitted exhibits, including (1) an email sent to defendant's attorney, (2) a photo of plaintiff's 75-foot tractor trailer, (3) a screenshot of a map depicting plaintiff's travels, (4) a photo of plaintiff with his son, (5) a photo of plaintiff in his police uniform, (6) a photo of plaintiff's community college instructor credential which was issued on June 18, 1981 and is valid for life, and (7) a photo of plaintiff as an altar boy. ECF No. 24. Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.

Plaintiff applied to be a truck driver for Walmart. Plaintiff was required to undergo a skills assessment as part of his application as a transportation truck driver. Watson Decl. at ¶ 2; Wierzbicki Decl. at ¶ 2; Ex 1 (Walmart's Corporate Policy for Supply Chain Driving Tests). Walmart requires applicants to pass the assessments to ensure their competency so that Walmart's drivers and those around them are safe. Watson Decl. at ¶ 14; Wierzbicki Decl. at ¶ 19. The skills assessment consists of a pre-trip inspection, driving skills assessment, and backing skills assessment. Watson Decl. at ¶ 5; Wierzbicki Decl. at ¶ 5, Ex 1; Ex 2 (Plaintiff's Day 1 Assessment); Ex 3 (Walmart's Onboarding Assessment Instruction). Applicants undergo at least two days of assessments for a total of six assessments (two pre-trip inspections, two driving assessments, and two backing assessments). Watson Decl. at ¶ 4; Wierzbicki Decl. at ¶ 4, Ex. 3. Applicants must be discharged early in the week if they fail the first two driving assessments or five of the six assessments, including the pre-trip and backing assessments. If an applicant performs well enough on the first two days, he or she is invited to return for a third day of testing, where he or she must undergo an additional pre-trip, driving, and backing assessment for a total of nine assessments over all three assessment days, including three pre-trip assessments, three driving assessments, and three backing assessments. Id.

To pass onboarding, drivers must pass three of four possible driving assessments, at least two backing assessments, and at least one pre-trip assessment. In the context of these onboarding assessments, a "Track 1" grade means a passing grade, while "Track 2" grade means a failing

grade. Ex 3; Watson Decl. at ¶ 4; Wierzbicki Decl. at ¶ 4. Per Walmart corporate policy, if an applicant receives "Track 2" on at least five of the nine assessments or "Track 2" on at least two of the three driving assessments, then the applicant must be discharged early on Wednesday or Thursday of that week. Ex 1; Watson Decl. at ¶ 4; Wierzbicki Decl. at ¶ 4. During a pre-check inspection, an applicant will receive a "Track 2" grade for failing to inspect and/or confirm any of the five critical components including the (1) seatbelt; (2) the tug test; (3) the fifth wheel; (4) that all four tandem slide pins are out and handle locked; and (5) that all 100 lug nuts are tight. Applicants will also receive a "Track 2" grade for failing to disconnect air lines or lower dolly legs prior to uncoupling, for having a poor routine, and not completing the assessment in under 30 minutes. Ex. 3; Watson Decl. at ¶ 7; Wierzbicki Decl. at ¶ 6.

While driving, an applicant will receive a "Track 2" grade for (1) speeding or impeding traffic grossly (more or less than five miles per hour either way); (2) failing to come to a complete stop; (3) following too closely (for at least three seconds); (4) failing to maintain lane/control the vehicle; (5) failing to signal appropriately; (6) hitting a curb; (7) failing to protect the right side of the vehicle including using the wrong lane and failing to use mirrors; or (8) rough shifting. Ex 3; Watson Decl. at ¶ 8; Wierzbicki Decl. at ¶ 7. An applicant will receive a "Track 2" grade during the backing skills assessment for any of these violations: (1) hitting a static trailer; (2) hitting a cone or passing through the space between cones; (3) exceeding twenty minutes to negotiate the course; (3) poor setup without correction; (4) ineffective uses of pull ups; and (5) failure to perform at least two 360 degrees of safety, failing to be generally straight. Ex 3; Watson Decl. at ¶ 9; Wierzbicki Decl. at ¶ 6. Other general safety concerns that result in "Track 2" grades include (1) failure to use three points of contract; (2) striking a fixed object or parked vehicle; (3) cell-phone use; (4) at-fault third-party collisions; (5) a preventable collision on driving assessment; (6) a near collision with a third party; (7) failing to use personal protective equipment; and (8) improper dress. Ex 3; Watson Decl. at ¶ 10; Wierzbicki Decl. at ¶ 10.

Plaintiff took his first day of assessments on October 31, 2023. Ex 2; Watson Decl. at ¶ 5; Wierzbicki Decl. at ¶ 5. On October 31, 2023, plaintiff's tests were administered by the Driving Assessors. During his pre-trip assessment, plaintiff failed to adequately check the: (1) clamps and

hoses; (2) steering components; (3) suspension; (4) steer axle; (5) wheels and lug nuts; (6) trailer slider pins; (7) tractor suspension/brakes; (8) mud flaps; and (9) fifth wheel. Ex. 2. In addition to these nine errors, plaintiff also failed to (10) check the surface before unhooking; (11) release the parking brake; and (12) slowly pull away under the trailer. Id. Further, plaintiff did not (13) lock the trailer brakes; (14) pull the slider handle safely; (15) position the pins; (16) release the slider handle; and (17) confirm the pins are locked in place. Id. In sum, plaintiff's pre-trip inspection checklist had 17 unchecked boxes. Id. Plaintiff earned a "Track 2" grade for the pre-trip portion of on his first day of assessments on October 31, 2023. Ex 2; Watson Decl. at ¶ 12; Wierzbicki Decl. at ¶ 11.

During his driving assessment on October 31, 2023, plaintiff failed to (1) maintain proper speed; (2) adjust speed to conditions; (3) pass with sufficient space; (4) protect the side during a right turn; and (5) obey traffic signals and signs. Ex 2; Watson Decl. at ¶ 11. The Driving Assessors also noted that plaintiff: (6) drove with an inconsistent speed, including 40 miles per hour in a 55 mile per hour zone; (7) drove at 40 miles per hour through a 25 mile per hour school zone while ignoring the flashing lights; and (8) ignored the speed limit in general including travelling at 25 miles per hour in a 55 miles per hour zone for over two miles after passing the sign. Id. In accordance with Walmart policy, plaintiff earned a "Track 2" grade for the driving portion of on his first day of assessments. Ex 2; Watson Decl. at ¶ 11; Wierzbicki Decl. at ¶ 11.

During his backing assessment on October 31, 2023, plaintiff failed to (1) execute proper set-up and (2) effectively use pull ups. Plaintiff failed to use "3 points" when exiting the cab and had his time expire. Ex 2; Wierzbicki Decl. at ¶ 9. Plaintiff earned a "Track 2" grade for the backing portion of on his first day of assessments. Ex 2; Watson Decl. at ¶ 12; Wierzbicki Decl. at ¶ 9. In sum, plaintiff earned a "Track 2" grade for all three of his first day of assessments on October 31, 2023. Watson Decl. at ¶ 12; Wierzbicki Decl. at ¶ 11.

Plaintiff took his second day of driving assessments on November 1, 2023. Ex 2; Watson Decl. at ¶ 12; Wierzbicki Decl. at ¶ 9. During his pre-trip assessment, plaintiff failed to adequately check the: (1) equipment for damage; (2) clamps and hoses; (3) belts; (4) brakes; (5) steering components; (6) suspension; (7) steer axle; (8) four-way flashers; (9) head lights; (10)

wheels and lug nuts; (11) trailer annual inspection; (12) conspicuity/reflective tape; (13) trailer slider pins; (14) trailer suspension/brakes; (15) track or suspension/brakes; (16) tire inflation/tread wear; (17) license plate for the trailer; (18) turn signals; (19) windshield/door glass; (20) low air warning system; (21) heater/air/defrost system; (22) instruments; (23) wiper and washer fluid; (24) warning triangles; (25) permit book; and (26) fifth wheel. Ex 4; Wierzbicki Decl. at ¶ 15. Additionally, plaintiff failed to (27) release the parking brake; (28) lock the trailer brake; and (29) confirm pins, resulting in a pre-trip inspection list with 29 unchecked boxes. Id. Plaintiff earned a "Track 2" grade for the pre-trip assessment on November 1, 2023. Id.

During his driving assessment on November 1, 2023, plaintiff failed to (1) maintain proper speed; (2) maintain a safe following distance; (3) adjust speed to conditions; (4) check mirrors frequently; (5) monitor the gauges; (6) stop and start without rolling back; (7) use his mirrors to check traffic; (8) check his mirrors while turning; (9) approach the signal prepared to stop; (10) obey traffic signals and signs; and (11) adjust speed to stop if necessary. Ex. 4. Plaintiff drove at 43 miles per hour after driving past a 40 miles per hour speed sign; reached a top speed of 62 miles per hour on the freeway; followed too close to other vehicles; and failed to come to a complete stop on two occasions. Id. Plaintiff received a "Track 2" grade for driving portion of on November 1, 2023. Ex. 4; Wierzbicki Decl. at ¶ 16.

During his backing assessment on November 1, 2023, plaintiff failed to (1) get out and look before backing; (2) set up properly; (3) signal before backing;(4) control speed while backing; and (5) use pull-ups effectively. Ex. 4. Also, plaintiff did not honk before backing. Id. Plaintiff received a "Track 2" grade for the backing portion of on his second day of assessments on November 1, 2023. Ex. 4; Wierzbicki Decl. at ¶ 16. In sum, plaintiff failed all three assessments during his second day of assessments. Id.

The driving assessors are responsible for grading, and not instructing, the driving of the applicants. The assessors hold no managerial power, are not managing agents, and do not set corporate policy. Watson Decl. at ¶14; Wierzbicki Decl. at ¶17. At no point did the driving assessors make any offensive, extreme, or offensive comments. Watson Decl. at ¶13; Wierzbicki Decl. at ¶¶ 12, 17. Plaintiff has not been treated by a psychiatrist, psychologist, or other

medical professional for his alleged emotional injuries and has not undergone any counseling or therapy. Ex. 5 (Walmart's Request for Production); Ex. 6 (Plaintiff's Responses to Request for Production).

## IV. Analysis

### A. Defendant is Entitled to Summary Judgement as to Age Discrimination

The California Fair Employment and Housing Act ("FEHA") outlaws employment discrimination against individuals over forty. See Cal. Gov't Code § 12941. "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination." Guz v. Bechtel National, Inc., 24 Cal.4th 317, 354, 100 Cal.Rptr.2d 352, 8 P.3d 1089 (2000). Plaintiff must first establish a prima facie case of age discrimination, and if he is able to do so, the burden shifts to defendant to articulate a legitimate non-discriminatory rationale for its actions. Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.1994) (citations omitted); Morgan v. Regents of Univ. of Cal., 88 Cal.App.4th 52, 68–69 (2000). If the defendant articulates a non-discriminatory rationale, the plaintiff has the burden of demonstrating the non-discriminatory rationale is pretext. Id.

To establish a prima facie case of age discrimination a plaintiff must show that (1) at the time of the adverse action he was forty years of age or older; (2) he was satisfactorily performing his job; (3) an adverse employment action was taken against him; and (4) some other circumstance suggesting a discriminatory motive was present, such as his replacement by a significantly younger worker with similar qualifications. Guz, 24 Cal.4th at 355. Here, plaintiff cannot establish a prima facie age discrimination claim because he cannot establish that he was performing his job satisfactorily, as demonstrated by the fact that plaintiff failed the required driving tests. Plaintiff's only argument against the evidence presented by defendant is that it is all falsified and perjured. See generally, ECF No. 24. "A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by [facts]." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff did not submit any documentation; he submitted only conclusory argument and photographs that are not relevant to the issues in this case. See ECF No. 24 at 27. Further, plaintiff does not allege that he was replaced by a younger worker with

similar qualifications, or that any Walmart employee made any sort of negative comment about his age. The facts presented, which are not genuinely disputed, plainly demonstrate that plaintiff cannot establish a prima facie case of age discrimination. Accordingly, defendant is entitled to summary judgment.

B. Defendant is Entitled to Summary Judgement as to Emotional Distress

Defendant is likewise entitled to summary judgment on plaintiff's emotional distress claim. The elements of a prima facie claim for intentional infliction of emotional distress are as follows: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982) (citations omitted). For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. The undisputed facts do not support a prima facie case of intentional infliction of emotional distress. Plaintiff has not alleged and does not present any evidence of harassment or poor treatment by the assessors or other Walmart employees; he alleges only that he was terminated from employment. Plaintiff has not identified any "outrageous" conduct on the part of defendant. Accordingly, defendant is entitled to judgment in its favor on this claim.

## V. Pro Se Plaintiff's Summary

The magistrate judge is recommending that judgment be granted in favor of the defendant because the evidence establishes that you cannot win on your legal claims. Even though you argue that the defendant is lying, you have not provided any evidence that contradicts the evidence that defendant provided. If you disagree with this recommendation, you may file objections within 21 days. The District Judge will make the final decision.

## VI. Conclusion

Accordingly, for the reasons explained above, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 20) be granted, that judgment be entered in favor of defendant, and that this case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED.

DATED: August 17, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE